[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff from a statement of compensation made by the defendant for the taking of a portion of certain property owned by Princeton Associates, together with rights, in connection with the improvement of Princeton Street, now known as Paul Manafort Drive, and with the operation and improvement of Central Connecticut State University. The subject property is situated in the City of New Britain on the northerly side of Princeton Street, as the street was known at the time of the taking. The property taken is described in the complaint and is shown on a map entitled: "STATE OF CONNECTICUT DEPARTMENT OF PUBLIC WORKS BRUCE L. MORRI — COMMISSIONER LAND TO BE ACQUIRED BY THE STATE OF CONNECTICUT FROM PRINCETON ASSOCIATES 47-61 PRINCETON STREET NEW BRITAIN CONNECTICUT SOUTH PERIMETER ROAD CENTRAL CONNECTICUT STATE UNIVERSITY NEW BRITAIN, CONNECTICUT PROJECT No. B1-RC-57." A copy of the map was introduced into evidence by agreement and marked Exhibit A. CT Page 4054-R
The parties agreed that the date of the taking was October 27, 1993, and that the defendant determined the amount of compensation to be $12,350 and deposited that sum with the clerk of the court. It was further agreed by the parties that interest should be paid at the rate of five per cent per annum on any amount awarded in excess of $12,350. It was also agreed that the taking resulted in a nonconforming front yard setback.
The subject property is in the northeasterly part of the City of New Britain near the Newington town line. It is approximately four miles from the center of the City and is within one block of the campus of Central Connecticut State University. It is on the northerly side of Paul Manafort Drive and there are five apartment buildings on the property which contains 0.861 of an acre, or 37,505 square feet. The two southerly buildings were about at the front setback line before the taking. The land slopes upward gradually from street grade to the rear to an embankment north of the buildings and it has an amesite parking surface for 38 cars. It is zoned Office and Public District and conformed to the zoning regulations before the taking. The property is supplied with water, gas, sewer, telephone and electric service. It is encumbered by an easement for a brook channel and culverts in favor of the City of New Britain and a pole line easement in favor of Southern New England Telephone Company. The neighborhood is residential and commercial and has good access to highways.
The taking consisted of a 150 foot strip of land along the southerly line of the subject property running from the then existing street line to a depth of 10 feet at its easterly end and 10.03 feet at its westerly end and containing 0.034 of an acre. Also taken was the right to construct a concrete walk over an area of 0.003 of an acre, more or less, in front of the building at the southwesterly corner of the subject property.
The taking will render the two southerly apartment buildings nonconforming as to the front setback line. It will not affect the other three buildings. Each of the two southerly apartment buildings contains six three-room units. The buildings are of brick veneer and are of generally average condition. CT Page 4054-S
Peter R. Marsele, a qualified real estate appraiser, was called as an expert witness by the plaintiff. He opined that the highest and best use of the property is to continue its present use. It was Marsele's opinion that the taking adversely affected the two buildings nearest the street because it had created a nonconformity as to setback, which would require a variance from the zoning board of appeals in the event that either should be destroyed by fire. He also opined that the nonconformity would make it more difficult for a potential purchaser to obtain financing. He used the income approach to estimate the value of the subject property both before and after the taking. He estimated the fair market value of the subject property before the taking to be $685,000 and after the taking to be $613,000. He concluded that damages were $72,000.
Gerald Perloff, an owner of the subject premises, testified for the plaintiff. He testified that the taking had affected rental income, making the two buildings on the street less desirable. He said that the rent for those units had been reduced to $375 per month, a $75 reduction, on the advice of a management company, because of noise.
Michael Aletta, a qualified real estate appraiser, was called as an expert witness by the defendant. He opined that the taking did not affect the buildings and he concluded that no severance damages resulted from the taking. He agreed that the highest and best use of the property is to continue its present use. Using the sales comparison method, he estimated the fair market value of the subject property before the taking at $300,040. The taking would remove 200 square feet of paving, 80 square feet of sidewalk and five shrubs. He added $514 as the fair market value of these site improvements and rounded his estimate of value before the taking to $300,550. He used the same method to estimate the fair market value of the subject property after the taking at $228,200. He noted that the subject property became nonconforming due to front yard setback but assumed that a variance will be granted. Aletta concluded that damages were $12,350.
Marsele agreed that $12,350 was reasonable as damages for the actual taking, but opined that the taking had an adverse effect on the remaining property. Paul Manafort Drive now leads to the university, whereas it was formerly a dead-end street. Although this will mean that there will be increased CT Page 4054-T traffic, the fact that the street is ten feet closer than before to the buildings will not affect their value adversely. The fact that the two most southerly buildings have been made nonconforming as to the front setback line does have some effect upon the value of the subject property. While it may be safe to assume that a variance will be granted if applied for, no application has yet been made. It is likely that a prospective purchaser would have to obtain a variance before he could obtain financing, and there are other circumstances in which a variance might become necessary. A prospective purchaser would consider these circumstances as bearing on the fair market value of the subject property.
The highest and best use of the subject property is a continuation of its present use as an apartment complex near he Central Connecticut State University.
The duty of a referee in condemnation matters is to make an independent-determination of value and fair compensation in light of all of the circumstances. Having seen the subject property, and having given full consideration to all of the testimony and all of the evidence offered by the parties, and relying upon my own knowledge of the elements constituting value, I have concluded that the damages sustained by the plaintiff are $21,370. Judgment may enter for the plaintiff for the further sum of $9,020 in addition to the sum of $12,350 which was deposited with the clerk of the court by the defendant, with interest on such further sum from the date of taking to the date of payment at the rate of five per cent per annum, together with an allowance of $1,500 toward the appraisal fee.
George D. Stoughton State Trial Referee
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 4054-HH